IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
| | ) |
| | ) CAUSE NO. 4:16-cv-180-TWP-TAB |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHEMTRUSION, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**CONSENT DECREE**

The Equal Employment Opportunity Commission (the "Commission" or "EEOC") instituted this action under the authority granted by Section 107 of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-17 ("ADA"). The Commission's action was brought to address allegedly unlawful employment practices. Specifically, the Commission alleged in its Amended Complaint that Chemtrusion, Inc. ("Chemtrusion") withdrew conditional offers of employment because of disability to Edwin Blake, Kevin Ratliff, Brandon Giffen and a class of applicants for production positions at Chemtrusion's Jeffersonville, Indiana, facility (the "Facility"), and/or failed to consider reasonable accommodations.  The Commission alleged that Chemtrusion further violated the ADA by participating in a contractual relationship that had the effect of subjecting its qualified applicants with disabilities to discrimination prohibited by the ADA

1

and administering medical examinations to job applicants before collecting all non-medical information.

Chemtrusion denied, and continues to deny, all of the EEOC allegations, and Chemtrusion states that it has at all times complied with its legal obligations. Nonetheless, Chemtrusion has agreed to enter into this Consent Decree to avoid the expense and burden associated with ongoing litigation.

The Commission and Chemtrusion hereby stipulate to the jurisdiction of the Court over the parties and the subject matter of this action.

The parties have advised the Court that they desire to resolve the allegations in the Complaint without the burden, expense, and delay of further litigation.

It is therefore the finding of this Court, based on the record as a whole, that (1) the Court has jurisdiction over the parties and the subject matter of this action, (2) the purpose and provisions of the ADA will be promoted and effectuated by the entry of this Consent Decree, and (3) this Consent Decree resolves all the matters in controversy between the parties as provided in the paragraphs below. It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

**GENERAL PROVISIONS**

1. Chemtrusion, its officers, agents, successors and any corporation or entity that may merge with Chemtrusion shall be permanently enjoined from:

    a.    failing to hire an otherwise qualified job applicant with a disability based on the need of Chemtrusion to make reasonable accommodation to such individual's physical or mental impairments.

2

b.      participating in a contractual relationship that has the effect of subjecting a qualified applicant with a disability to the discrimination prohibited by the ADA;

c.      making disability-related inquiries and conducting medical examinations before Chemtrusion has (i) made a conditional offer of employment and (ii) evaluated all non-medical information (including results for drug tests and for background check inquiries) that are germane to the hiring decision;

d.      employing qualification standards or selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, on the basis of disability, unless the standard, test, or other selection criteria, as used by Chemtrusion, is shown to be job-related for the position in question and is consistent with business necessity; and

e.      discriminating or retaliating in any way against any person because of opposition to a practice made unlawful under the ADA or because of the filing of a charge, the giving of testimony, assistance or participation in any manner in an investigation, proceeding or hearing under the ADA.

## TERM, SCOPE AND ISSUES RESOLVED

2.      The duration of this Consent Decree (this "Decree") shall be two (2) years from the date of entry by the Court.

3.      This Decree shall apply to Chemtrusion's Jeffersonville, Indiana, facility and the managers, supervisors, human resource personnel and other employees at that facility who play a role in the hiring of production operators

3

and/or ordering or evaluating employment-related medical examinations. Nothing in this paragraph or any other paragraph of this Decree shall be construed as absolving Chemtrusion from any of its obligations under the ADA as it relates to hiring and pre-employment medical examinations conducted by third-party medical providers.

4.      Nothing in this Decree shall be construed to preclude EEOC from filing lawsuits based on charges not resolved in this Decree regarding circumstances not known to the EEOC at the time of this Decree entry or based on unrelated charges filed by other individuals.  At the time of filing the Joint Motion for Entry of Consent Decree, the EEOC was not aware of any charges against Chemtrusion pending before the EEOC relating to the issues resolved in this Decree, including any charges filed by or on behalf of any class members identified during the course of this litigation other than those persons listed in paragraph 14 below.  The EEOC will not seek relief for the claims brought in the EEOC's lawsuit beyond that set forth in this Consent Decree. Any individual charges filed with EEOC or the State equivalent after the effective date of this Decree, based on conduct alleged to have occurred prior to the effective date of this Decree, will be processed by EEOC in accordance with its standard procedures.

## EMPLOYMENT PRACTICES

**Disability-Related Inquiries and Medical Examinations:**

5.      Chemtrusion will affirm to the EEOC in writing within five (5) business days of the entry of this Decree that it has instructed in writing both (a) its

employees who play a role in the hiring of production employees, and (b) its third

party vendors contracted by Chemtrusion to provide employment-related medical

services, that (i) no medical examination of an applicant shall be conducted and (ii)

no medical data or evidence shall be collected from a job applicant, until

Chemtrusion has issued a conditional job offer to the applicant and has completed a

background check and the applicant has passed a test for the illegal use of drugs.

6.      Chemtrusion will conduct an individualized analysis of whether a

qualified applicant can perform the essential functions of the job sought, with or

without reasonable accommodation and will not withdraw a job offer based on the

results of any disability-related inquiry or medical examination without first

conducting an individualized analysis of whether the individual can perform the

job's essential functions with or without reasonable accommodation. Specifically,

Chemtrusion will affirm to the EEOC in writing within five (5) business days of the

entry of this Decree that Chemtrusion has instructed in writing both (a) its

employees who play a role in the hiring of production employees and (b) its third-

party vendors contracted by Chemtrusion to provide employment-related medical

services, that they will not recommend a "no hire" decision or otherwise indicate

that an individual has failed a medical examination without conducting an

individualized analysis of whether the individual can perform the job's essential

functions with or without reasonable accommodation. Chemtrusion will also confirm

in writing to each of its third-party vendors contracted by Chemtrusion to provide

employment-related medical services that Chemtrusion retains the responsibility to

make all decisions with respect to the employment of an applicant, including his or her ability to perform the essential job functions with or without a reasonable accommodation.

7.      Within 30 days of the entry of this Consent Decree, Chemtrusion will:

> a.  Direct its medical services provider to conduct all medical examinations in a manner that comports with all federal laws and regulations, including, but not limited to the ADA, and provide the EEOC with a copy of such directive within five (5) business days of its issuance;
>
> b.  Notify its medical services provider that, as a part of the medical examinations requested by Chemtrusion, an individualized analysis must be conducted of whether an applicant can perform the essential functions of the job sought by the applicant with or without reasonable accommodation; and
>
> c.  revise its policies and other communications and literature, including its orientation and recruitment policies and literature, to comply with the provisions set forth in this section.

**Non-discriminatory Job Offers:**

8.      Chemtrusion shall immediately take the following steps to better ensure that its job offers comport with the ADA:

    a.   provide its medical service vendor with current, accurate and complete job descriptions for all production positions for which medical examinations are performed by the provider;

    b.   make an individualized assessment, based upon a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, as to whether an applicant is qualified for the job sought and whether an applicant poses a direct threat that cannot be eliminated or reduced by reasonable accommodation;

    c.   not require that qualified applicants be free of physical or mental restrictions in order to be offered employment;

    d.   not permit any agent to employ an across-the-board policy of excluding all applicants who take certain prescription drugs and/or have a mental or physical impairment;

    e.   engage in the interactive process and provide reasonable accommodation to the known disabilities of qualified applicants; and

    f.   affirmatively state in all job-vacancy advertisements that Chemtrusion is an equal opportunity employer and considers all applicants regardless of disabilities.

**Training:**

9.    No less than 60 days from the effective date of this Decree, Chemtrusion shall provide the managers, supervisors and human resources

personnel who play any role in the hiring process, no less than two hours of training that covers:

      a.   accommodation under the ADA;

      b.   medical examinations under the ADA;

      c.   direct-threat determinations under the ADA;

      d.   qualification standards under the ADA;

      e.   no-restriction policies under the ADA;

      f.   complying with the ADA when contracting with a third-party; and

      g.   the impact of the ADA on the hiring process.

Thereafter, managers, supervisors and human resource personnel who play any role in the hiring process, shall receive annual training on the same subjects. Chemtrusion shall identify the person or persons leading the training, and provide to the Commission a list of the names and job titles of all attendees for each training session, as well as copies of any written materials provided to attendees, no later than 30 days after the training takes place.

10.     For the duration of this Decree, all new managers and employees involved in the hiring process shall receive the above-described training before they play any role in hiring but in no event later than 30-days after they are hired or placed in a position that requires them to play any role in hiring.

11.     No less than 45 days after the effective date of this Decree, Chemtrusion will provide training to its medical service provider(s) and any third-

party agent who is playing a role in the administration of medical examinations. The training at a minimum shall include:

    a.  a tour of the Jeffersonville manufacturing facility and an opportunity to observe all jobs for which medical examinations are conducted by that provider;

    b.  providing and reviewing written job descriptions that include a list of all essential functions of the jobs for which medical examinations are conducted by the provider;

    d.  an explanation of the role of the medical provider with respect to employment entrance examinations and the provider's compliance with the ADA;

    e.  qualification standards under the ADA regarding hiring;

    f.  direct threat as a qualification standard and the individualized analysis of the individual's present ability to safely perform the essential functions of the job, as required by the ADA;

    g.  the permissible scope of any medical follow up that is permitted under the ADA;

    h.  prohibition on "no restriction" policies, protocols or practices; and

    i.  prohibition on blanket screening of applicants based on their prescription drug use.

Chemtrusion shall identify the person or persons leading the training, and provide to the EEOC a course description, schedule, and all written materials to be

9

distributed at said course at least 7 business days prior to the training. Defendant shall provide to the EEOC a list of the names and job titles of all attendees for each training session no later than 30 days after the training takes place.

12.     Any new medical service provider retained by Chemtrusion shall receive the same training described in the preceding paragraph before conducting (or being involved in) any employment entrance examinations (post-offer medical examinations) of applicants for Chemtrusion's production jobs. Chemtrusion shall identify the person or persons leading the training, and provide to the EEOC a list of the names and job titles of all attendees for each training session no later than 30 days after the training takes place.

13.     The training described in the preceding paragraphs shall be provided at Chemtrusion's expense by Chemtrusion's counsel or an individual who is experienced in ADA disability and accommodation matters.

### MONETARY RELIEF

14.     Chemtrusion shall pay a total of $145,000.00 less applicable taxes and withholdings, to Edwin Blake, Kevin Ratliff, David Timberlake, and Brandon Giffen, who the EEOC alleges were subjected to withdrawn job offers in violation of the ADA, with the division of such amounts among these persons to be determined solely by the EEOC.

15.     The total amount identified in paragraph 14 includes $136,000.00 in back pay and interest. Chemtrusion shall make and be responsible for paying its share of all applicable payroll taxes. Chemtrusion shall issue a W-2 for any

payment of back wages, and all withholding required by law shall be deducted from the same.

16.     The total amount identified in paragraph 14 includes $9,000.00 in compensatory damages. There shall be no tax withholdings or deductions from amounts designated compensatory damages. Chemtrusion shall issue a form 1099 to all claimants for compensatory damages.

17.     Chemtrusion shall not deduct from any amount the employer's share of any costs, taxes or social security required by law to be paid by Chemtrusion.

**Payment**

18.     All payments shall be made by check and made payable to each claimant, or his heirs or assigns in the event of death, for the respective amounts.

19.     Each party receiving monetary relief pursuant to this Decree shall execute a release in the form attached hereto as Attachment A.

20.     Within 60 days from the entry of this Decree, EEOC will provide Chemtrusion with a final distribution list identifying the specific amount each individual is to receive. The final distribution list will provide the name, address, and payment amounts of back pay and compensatory for each person. The EEOC will also provide Chemtrusion with executed IRS W-4 forms for each claimant receiving a back-pay award and the executed release forms described above.

21.     Within 14 days of the EEOC providing the final distribution list, executed W-4 forms, and executed releases, Chemtrusion shall mail settlement checks to the claimants via certified mail to the addresses provided by the EEOC.

Payments to each claimant shall be in the amounts specified in the final distribution list for back pay and for compensatory damages. Payment checks shall be accompanied by a statement detailing all deductions.

22.     Within ten business days after payments are mailed to claimants, Chemtrusion shall submit a copy of the checks issued and proof of delivery (a signed certified mail receipt) to the EEOC in care of the EEOC's Regional Attorney for the Indianapolis District, Kenneth Bird, Equal Employment Opportunity Commission, 101 W. Ohio Street, Suite 1900, Indianapolis, Indiana, 46204 ("EEOC's Mailing Address").

**Determination of Individuals Who Will Get Relief**

23.     The EEOC will determine the amounts payable to each of the class members from the damages funds referenced in this Consent Decree. Chemtrusion shall not participate or have any role in determining eligible claimants or amounts payable to such individuals.

24.     In the event that any claimant who is identified to receive an award has a check returned as undeliverable, Chemtrusion shall immediately notify the EEOC and the EEOC will make all reasonable efforts to locate such person.

**OTHER RELIEF**

**Review and Reporting of Applicants Excluded by Medical Examination**

25.     For the duration of this Decree, Chemtrusion shall have its legal counsel review all conditional job offers that are contemplated for withdrawal due to the results of an employment entrance examination, prior to the applicant being

12

notified of any withdrawal. Chemtrusion shall keep track of all employment offers withdrawn as a result of an employment entrance examination and report those withdrawals on a quarterly basis, no later than the 15th business day of the month following the end of the calendar quarter. Each report will include: applicant name; contact information; position sought; and reason for withdrawal. Included in the report, Chemtrusion shall produce a copy of all application materials, notes, emails, and medical documents relating to each rejected applicant. The first report shall be due after the effective date of this Decree. These reports shall be sent to EEOC Regional Attorney, Kenneth L. Bird or his successor, at the EEOC's Mailing Address.

## DISSEMINATION OF DECREE AND NOTICE POSTING

26.     Within ten (10) business days of entry of this Decree, Chemtrusion shall notify the managers, supervisors and employees whose duties include compliance with any provision of this Decree, as well as any individual or entity retained to perform work required under this Decree of the obligations created hereunder. Chemtrusion shall provide such notice to all newly hired employees whose duties include compliance with any provision of this Decree within ten (10) business days of his or her hire.

27.     Within five (5) business days after the Court's entry of this Decree, Chemtrusion shall post in a conspicuous place frequented by applicants for positions at Chemtrusion's Facility, the Notice attached as Attachment B to this Decree. The Notice shall be the same type, style, and size as set forth in Attachment

B. The Notice shall remain posted for the duration of this Decree. If the Notice becomes defaced or illegible, Chemtrusion shall replace it with a clean copy. Chemtrusion shall certify to the EEOC, in writing, within ten days of entry of this Decree that the Notice has been properly posted and shall provide recertification in each of the annual reports required hereunder. Chemtrusion shall permit a representative of the EEOC to enter its Jeffersonville facility for limited purpose of verifying compliance with this paragraph at any time during normal office hours without prior notice.

MONITORING PROVISIONS

28.     The EEOC, acting through its employees and duly authorized agents, shall have the legal authority during the term of this Decree to enter Chemtrusion's Jeffersonville Facility, with reasonable prior notice no fewer than 7 days to Chemtrusion and its counsel, and conduct an on-site inspection to ensure compliance with the terms of this Decree.

29.     Such inspections may, at the discretion of the EEOC, include access to any and all documents relating to this Decree for the purposes of inspection and duplication, interviews or depositions of any person, inspection of any area within the facility, and any other investigatory technique or procedure permitted by Title VII or the EEOC's regulations; provided, however, all of EEOC's employees and authorized agents must comply with all safety rules and regulations in effect at the Facility and all legal restrictions on the confidentiality of information relating to the Facility and the operations therein.

30.    The EEOC shall also have the legal authority to require appearance and testimony of Chemtrusion's personnel (at reasonable times and locations) at interviews or depositions and production of relevant documents to ensure compliance with the terms of this Decree.

## INITIAL AND ANNUAL REPORTING

31.    Within 90 days of compliance with paragraphs 7, 12 and 26, and 27, Chemtrusion shall provide written certification of compliance to the EEOC Regional Attorney, Kenneth L. Bird, or his successor, at the EEOC's Mailing Address.

32.    Chemtrusion shall provide annual reports and the first annual report shall be due thirty (30) days following the first anniversary of the effective date of this Decree and subsequent annual reports due 30 days after each subsequent anniversary. The final annual report shall be due 45 days prior to the date this Decree is set to expire, describing the status of compliance with the ongoing posting and training requirements of this Decree. All annual reports shall be sent to the EEOC's Regional Attorney, Kenneth L. Bird, or his successor, at the EEOC's Mailing Address.

## RETENTION OF JURISDICTION/ENFORCEMENT OF DECREE

33.    This Consent Decree shall be binding on Chemtrusion and its successors or assigns. No transfer or assignment of Chemtrusion's property or assets constituting the Facility shall relieve Chemtrusion of its obligation to ensure that the terms of this Decree are implemented.

34.     Should a transfer or assignment of Chemtrusion's property or assets constituting the Facility, or of the ownership of Chemtrusion's stock, be proposed, at least 30 days prior to the closing of such transfer or assignment, Chemtrusion shall provide a copy of this Decree to the proposed transferee or purchaser.  Any such transfer of Chemtrusion's property or assets (or of its stock) without providing the copy of the Decree and providing the notice as specified in this paragraph shall constitute a violation of this Decree.

35.     This Court shall retain jurisdiction to enforce this Decree and will have all available powers bestowed by law to enforce this Decree, including, but not limited to, monetary sanctions and injunctive relief.

36.     The EEOC may petition this Court for compliance with this Decree at any time during which this Court maintains jurisdiction over this action; provided, however, the EEOC must provide Chemtrusion with prior notice of any alleged violation by Chemtrusion and allow Chemtrusion a reasonable opportunity not less than 30 days but not to exceed 45 days to correct any alleged deficient performance prior to petitioning the Court.  Should the Court determine that Chemtrusion has not complied with this Decree, the EEOC may request that appropriate relief, including extension of this Decree for such period as may be necessary to remedy its non-compliance, be ordered.

37.     The monetary relief ordered in this Consent Decree constitutes a debt owed to and collectible by the United States.

## EEOC AUTHORITY

38.     With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the EEOC to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and which do not arise out of the claims asserted in this lawsuit.

## COSTS AND ATTORNEY'S FEES

39.     Except as specifically provided herein, each party shall be responsible for and shall pay its own costs and attorney's fees.


IT IS SO ORDERED.

Date: 7/20/2017

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

## ATTACHMENT A – Full and Final Release

### RELEASE

In consideration of the payment to me by Chemtrusion, Inc. ("Chemtrusion") of the gross amount of _____ ($_____ ), for back pay less applicable taxes and withholdings, and _____ ($_____) for compensatory damages from which no tax withholdings or deductions shall be made and in consideration of the Consent Decree agreed to by the Equal Employment Opportunity Commission and Chemtrusion in CAUSE NO. 4:16-cv-180-TWP-TAB (the "Lawsuit"), entered by the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, NEW ALBANY DIVISION (the "Court") on the ___ day of _____, 2017, of which this Release is a part,

I, _____, hereby fully and forever release and discharge Chemtrusion, its successors and assigns, including its present and former directors, officers, employees and agents, from any and all claims of impermissible medical inquiry, failure to accommodate or discriminatory failure to hire arising under the ADA that I may have or have had against them up to the date of my execution hereof, including but not limited to any claim that was or could have been asserted in the *EEOC v. Chemtrusion, Inc*., Cause No. 4:16-cv-180-TWP-TAB.

I acknowledge that I am executing this Release voluntarily and with full knowledge and understanding of its contents and I understand that I am releasing the claims described above by signing this Release.

_____
Name (printed)

_____
Signature

_____
Date

18

**ATTACHMENT B - NOTICE**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**EMPLOYEE NOTICE**

**This Notice is Posted Pursuant to a Consent Decree Entered into Between the EEOC and Chemtrusion, Inc. Resolving a Federal Lawsuit Alleging Disability Discrimination under the Americans with Disabilities Act.**

Federal law requires that there be no discrimination against any employee because of the employee's race, color, religion, sex, national origin, age (over 40), disability, or genetic information. The Americans with Disabilities Act ("ADA') prohibits employers from discriminating against employees based on disability. Subjecting applicants for employment to disability-related inquiries and medical examinations before the employer extends to that applicant a conditional job offer is a form of disability discrimination. Additionally, failing to hire a disabled applicant because of their disabilities is a form of disability discrimination if the applicant can perform the essential duties of the position with or without accommodation. The law also prohibits employers and other covered entities from retaliating against employees who have exercised their rights under the Americans with Disabilities Act.

Chemtrusion supports and will continue to comply with such Federal law in all respects and will not take any actions against employees because they have exercised their rights, reported an alleged violation under the law, or have given testimony, assistance or participation in any investigation, proceeding or hearing conducted by the U.S. Equal Employment Opportunity Commission.

**THIS IS AN OFFICIAL NOTICE AND SHALL NOT BE DEFACED OR REMOVED**

SIGNED this _____ day of _____, 2017.

_____
[Insert Chemtrusion Corporate Rep.]

Questions concerning this notice may be addressed to:
Equal Employment Opportunity Commission
101 W. Ohio St., Suite 1900
Indianapolis, Indiana 46204-4203
Telephone:  (317) 226-7212 – TDD: (317) 226-5162 – Toll free: 1-800-669-4000.
**This OFFICIAL NOTICE shall remain posted for 2 years from date of signing.**